**Adalyn Mae BENNETT, Appellant,**

v.

**Joseph J. McKIBBEN, individually and in his representative capacity as the Executor of the Estate of Robert McKibben, deceased, and Bobby C. Ramsey, Appellees.**

**No. 86765.**

Court of Appeals of Oklahoma, Division No. 3.

March 19, 1996.

---

4. Abuse of discretion by the trial court cannot be presumed. *Eskridge v. Ladd,* 811 P.2d 587 (Okla. 1991).

Tony Jack Lyons, Terrell S. Crosson, Pryor, for Appellant.

Richard D. James, Jay, for Appellee McKibben.

O.B. Johnston, III, Thomas J. McGeady, David E. Jones, Vinita, for Appellee Ramsey.

### OPINION

HANSEN, Presiding Judge:

Appellant, Adalyn Mae Bennett ("Bennett"), seeks review of the trial court's order which granted the summary judgment motions of Appellees, Joseph J. McKibben ("McKibben") and Bobby C. Ramsey ("Ramsey").[1] Bennett brought this action against Appellees alleging slander of title, fraud, conversion and emotional distress. She sought compensatory and punitive damages. On appeal, Bennett argues summary judgment was improper because she presented sufficient evidence of each element of each cause of action. Review of the judgment is before this Court under the accelerated procedure provided for in Rule 1.203, Rules of Appellate Procedure in Civil Cases, 12 O.S., Ch. 15, App. 2.

The uncontroverted facts show that from 1978 to 1984, Bennett and her husband, Cecil Bennett, together with Robert McKibben, purchased certain real property located in Delaware County, Oklahoma.[2] In March, 1986, Cecil Bennett died. His estate was not probated or administered, and no action, either by affidavit or court proceedings, has ever been taken or held to determine his death or terminate the joint tenancy estate. In October, 1987, Appellant Bennett executed an instrument before a notary public concerning the property which provides:

> I, Adalyn M. Bennett, have this date executed my signature on the deed covering Lots 10, 11, 12, 13, 14, 23, 24, 25, and 26, Block 26, of Isle's End Grand Lake Estates Addition No. 1, a subdivision, according to the recorded plat thereof, Delaware County, Oklahoma, said deed to be held by Grand Lake Bank.

> Upon sale of said property or renegotiation of mortgage by Robert C. McKibben, Grand Lake Bank is authorized to release this deed to Robert C. McKibben, subject to the full payoff of Loan # 53–365–36101 at Grand Lake Bank.

In December, 1992, Robert McKibben contacted the law office where Appellee Ramsey practices, seeking to enforce the terms of Bennett's October, 1987, instrument. On April 16, 1993, Ramsey filed a Petition on behalf of his client, Robert McKibben, seeking specific performance by Bennett of a May, 1982, contract which he alleged was amended by Bennett's October, 1987 "amendment".[3] This action will be referred to as C–93–95. The petition was subsequently amended. On September 17, 1993, Robert McKibben died. A Second Amended Peti-

---

1. Appellee McKibben filed a motion for summary judgment which adopted the briefs, exhibits, and affidavits of Appellee Ramsey's motion for partial summary judgment. Ramsey's motion sought summary judgment on *all issues raised by Bennett's petition* and the trial court's judgment granted both motions without any reservation. Neither party indicates fewer than all claims were adjudicated by the trial court. Accordingly, Appellee Ramsey's motion for partial summary judgment will be treated as a motion for summary judgment.

2. The real property is described as Lots 9 through 14 and Lots 23 through 26, Block 26, of Isle's End Grand Lake Estates Addition No. 1, Delaware County, Oklahoma. The parties received the property by virtue of two Quit Claim Deeds and two Warranty Deeds. Lot 14 was held by the three owners as tenants in common and the remaining lots were held in joint tenancy.

3. According to the petitions in C–93–95, Robert McKibben entered into a contract with Bennett and her husband in May, 1982 regarding "certain rights to real property" which are Lots 11, 12, 13, 14, 23, 24, 25 and 26, Block 26, Isle's End Addition, Monkey Island, Delaware County, Oklahoma. A copy of this contract was attached to Ramsey's motion for summary judgment.

tion was filed. In July, 1994, the parties settled that action through a judicially-approved settlement agreement and McKibben executed a quit-claim deed to Bennett of all his interest in the properties. According to Bennett, Appellees dismissed C–93–95 in July, 1994. On July 17, 1995, Bennett filed this action.

In her petition, Bennett alleges title to her property was slandered when Appellees filed the petition, amended petition, and second amended petition in C–93–95. According to her response to Appellees' motion for summary judgment, the slanderous statements contained in the petitions include Appellees' allegations in those petitions that Bennett had no right, title or ownership in the real properties and that Appellee Joseph McKibben had an interest in the properties. Appellees are guilty of fraud, she avers, because they attempted to defraud her of her real property by filing C–93–95. Appellees are guilty of conversion, she avers, because she had personal property in the duplex wherein she resided with Robert McKibben on the subject properties and that Appellees have never returned or accounted for her personal property. Although she refers to her affidavit in her response to the summary judgment motion, this affidavit has not been included in the record on appeal.[4] Finally, Bennett argues the act by Appellees of filing the frivolous and meritless lawsuit constitutes the tort of outrage.

■ Summary judgment is an appropriate device to reach final judgment only when it appears that there is no substantial controversy as to any material fact, and that one of the parties is entitled to judgment as a matter of law. *Seitsinger v. Dockum Pontiac Inc.*, 894 P.2d 1077, 1079 (Okla.1995). A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a claim or defense. *Cinco Enterprises, Inc. v. Benso*, 890 P.2d 866 (Okla.1994). In opposing a motion for summary judgment, a party cannot rely on pleadings alone, but shall submit with its response, affidavits and other materials con-

taining facts that would be admissible in evidence as to which that party contends a genuine issue exists. *Thompson v. Box*, 889 P.2d 1282, 1284 (Okla.App.1994); Rule 13, 12 O.S., Ch. 2, App. 1. Unsupported contentions of material fact are not sufficient. *Cinco Enterprises, Inc.*, at 871. All inferences in the evidence must be taken in favor of the party opposing the motion. *Seitsinger*, at 1079.

In support of their motions for summary judgment, Appellees argued that with regard to the slander of title claim, the statements made in the petitions in C–93–95 are absolutely privileged under 12 O.S. 1991, § 1443.1 and the common law as set forth in *Kirschstein v. Haynes*, 788 P.2d 941 (Okla.1990). They also assert the absolute privilege provided for in *Kirschstein* applies to the tort of outrage when same is based on privileged statements and/or that Bennett has failed to present any evidence supporting her claim for emotional distress. With regard to fraud, Appellees maintain the fraud claim is barred by the statute of limitations and/or that the elements of fraud are not present. Appellees assert Bennett has failed to provide any evidentiary material which supports her conversion claim and her request for punitive damages.

■ Slander of title is a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or some right of his, causing him special damages. *Local Federal Savings and Loan Association of Oklahoma City v. Sickles*, 196 Okla. 395, 165 P.2d 328 (Okla.1945). There are five elements in a slander of title claim: 1) a publication, 2) a false statement in the publication, 3) malice in the publication, 4) special damage by reason of the publication, and 5) ownership or possession of the property that is the object of the publication. *Morford v. Eberly & Meade, Inc.*, 879 P.2d 841, 842 (Okla.App. 1994); *Zehner v. Post Oak Oil Company*, 640 P.2d 991 (Okla.App.1981).

---

4. A portion of this affidavit by Bennett was mentioned at the hearing on the motions for sum-

mary judgment, according to the transcript.

Generally, statements made in judicial pleadings or proceedings are absolutely privileged. *Kirschstein v. Haynes,* 788 P.2d 941, 948 (Okla.1990); *Dickerson v. Crozier,* 128 Okla. 162, 261 P. 545 (1927). 12 O.S. 1991, § 1443.1 provides in part:

A. A privileged publication or communication is one made:

First. In any legislative or judicial proceeding or any other proceeding authorized by law;

 \*   \*   \*   \*   \*   \*

B. No publication which under this section would be privileged shall be punishable as libel.

In *Kirschstein v. Haynes,* 788 P.2d 941 (Okla.1990), the Supreme Court discussed the absolute privilege against defamation actions for communications by attorneys and parties which relate to judicial or quasi-judicial proceedings. Because the communications made in *Kirschstein* were made preliminary to a proposed proceeding, the Court noted the communications did not expressly fall within the protection of Section 1443.1. The Court concluded the communication at issue, a physician's affidavit published to support a delayed birth certificate, was privileged under the Restatement of the Law (Second) of Torts, § 586.

Section 586 of the Restatement (Second) provides:

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

As noted in *Kirschstein,* Section 587 and 588 of the Restatement contain substantially the same language with regard to publications made by parties and witnesses, respectively.

Bennett argues the absolute privilege discussed in *Kirschstein* only applies to personal defamation actions, not disparagement of title actions.

Restatement of the Law (Second), Torts, § 623A provides:

*Liability for Publication of Injurious Falsehood—General Principle*

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

(b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Restatement of the Law (Second), Torts, § 624 provides:

*Disparagement of Property— Slander of Title*

The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.

And finally, Restatement of the Law (Second), Torts, § 635 provides:

*Absolute Privileges*

The rules on absolute privilege to publish defamatory matter stated in §§ 583 to 592A apply to the publication of an injurious falsehood.

Thus, according to the Restatement, the absolute privilege provided to attorneys and parties in Sections 586 and 587 apply to slander of title actions. See Illustrations 2 and 4 to the Comments of Section 635 and *Conservative Club of Washington v. Finkelstein,* 738 F.Supp. 6 (D.D.C.1990). The statements which allegedly disparaged Bennett's title were absolutely privileged. Accordingly, we conclude the trial court was correct in sustaining the summary judgment

motion of Appellees with regard to the slander of title cause of action.

Under *Kirschstein,* when a claim for intentional infliction of emotional distress is based on the same factual underpinnings as a defamation claim for which the privilege applies, the claim for intentional infliction of emotional distress is also barred by the absolute privilege. *Kirschstein,* at 954. In her response to the motions for summary judgment, Bennett argued the conduct of Appellees in filing a frivolous and meritless lawsuit was "extreme and outrageous" and caused her severe emotional distress. Her claim for emotional distress is based on the same factual underpinnings as the slander of title claim and the absolute privilege bars such claim. We find no error by the trial court in rendering judgment for Appellees on this claim.

■ With regard to her fraud claim, Bennett argued Appellees committed fraud by attempting to deprive her of her ownership of the real estate. Specifically, she contends the allegations in the Second Amended Petition of C–93–95, that she had no right, title or interest in the property and that Joseph McKibben had an interest in the property, are false. She briefs joint tenancy law and concludes that as to Lots 9 through 13 and Lots 23 through 26, she was the owner in fee simple.[5] She states she relied on the allegations as shown by her hiring of an attorney to defend the lawsuit and that she was damaged to the extent of her costs in defending C–93–95.

■ 12 O.S. 1991, § 95 requires civil actions based on fraud to be brought within two years. The amended petition in C–93–95, wherein Appellees stated Bennett had no right, title and interest to the properties and that McKibben was in adverse possession of the properties was filed on May 12, 1993. Bennett's petition in this cause of action was filed July 17, 1995. Thus, it was filed outside the limitations period. Bennett's contention the two-year period should run from the date the second amended petition was filed in C–93–95 (March 1, 1994), is without merit. The substance of the second amended petition was the same as the May 12, 1993, amended petition. Only the name of the plaintiff was changed from Robert McKibben, to Joseph J. McKibben as substitute plaintiff. The trial court did not err in granting Appellees summary judgment on Bennett's fraud cause of action.

■ Bennett has presented no evidentiary material to support her contention Appellees have converted her personal property.[6] Ramsey presented an affidavit that he has never converted any of Bennett's property nor has he directed his clients, Robert or Joseph McKibben to convert any of her property to their own use. A party who wishes to oppose a motion for summary judgment has the burden of providing evidentiary materials containing facts what would be admissible in evidence as to which that party contends a genuine issue exists. *Thompson v. Box,* 889 P.2d 1282 (Okla.App.1994). A party may not rely on pleadings alone. Rule 13(b), 12 O.S., Ch. 2, App. 1. The trial court did not err in granting summary judgment as to the conversion cause of action.

■ Similarly, we find no error with regard to summary judgment on Bennett's request for punitive damages. A plea for punitive damages is generally considered to be an element of recovery on an underlying cause of action: it is not a separate cause of action. *Rodebush v. Oklahoma Nursing Homes, Ltd.,* 867 P.2d 1241 (Okla.1993); 23 O.S. 1991, § 9. Because Bennett's underlying tort causes of action have failed, so too must her request for punitive damages.

5. We note Lots 9 and 10 were not included in the petitions in C–93–95 and were not included in the May 18, 1982 contract between Robert McKibben, Andrew Cecil Bennett and Bennett.

6. Bennett refers to her affidavit which, as we noted earlier, is not in the record on appeal. In her response, she quoted a passage from this affidavit which she contends, supports her conversion cause of action. The passage provides that she attempted to make an inventory of her property sometime after her deposition was taken and she was "set upon by a bunch of people who then ran me off of my own property". There is no evidence at all that these people were agents of Appellees or that Appellees participated in denying her access to her property.

The judgment of the trial court is therefore, AFFIRMED.

ADAMS, V.C.J., and BUETTNER, J., concur.